**Affirmed in Part and Reversed and Rendered in Part; Opinion Filed August 24, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00018-CV**

**CITY OF DALLAS AND BOARD OF ADJUSTMENT OF THE CITY OF DALLAS, Appellants**
**V.**
**PDT HOLDINGS, INC. AND PHILLIP THOMPSON HOMES, INC, D/B/A PHILLIP THOMPSON CUSTOM HOMES, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08484**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Nowell

The City of Dallas and the Board of Adjustment of the City of Dallas (collectively the Board) appeal the trial court's denial of their plea to the jurisdiction. PDT Holdings, Inc. and Phillip Thompson Homes, Inc., d/b/a Phillip Thompson Custom Homes (collectively PDT) sought a variance from the Board after the City issued a stop work order for violation of the residential proximity slope (RPS) ordinance on one of PDT's projects. The Board denied the variance and PDT sought judicial review of that decision in the district court. PDT also brought claims for

violation of the due course of law, estoppel, laches, and waiver. It requested the court to reverse the Board's decision or, alternatively, award it damages for complying with the RPS ordinance. The Board filed a plea to the jurisdiction asserting governmental immunity. The trial court denied the plea to the jurisdiction after a hearing.

We conclude the trial court has jurisdiction to review the Board's decision under the terms of local government code section 211.011. However, we agree with the Board that the trial court lacks jurisdiction to grant relief apart from section 211.011, including PDT's request for damages and the constitutional claim. We reverse in part and render judgment dismissing PDT's claims for damages and for violation of the due course of law for want of jurisdiction. In all other respects, we affirm the trial court's order and remand for further proceedings consistent with this opinion.

**Background**

PDT applied for a permit from the City to build a duplex on its property in Dallas. The property is zoned for residential use and the general height restriction for the property is thirty-six feet. However, the RPS height restriction, which limits height based on a projected line emanating from any residentially zoned property, limited the height of a structure on the property to twenty-six feet.

PDT alleged that before submitting plans, it inquired with the City to verify provisions of the Dallas Development Code (Code) and their applicability to the

property. PDT relied on the City to provide it with accurate information about the Code's application to the property and the City's enforcement of the Code.

In September 2017, PDT submitted detailed plans for the project to the City. The plans called for construction of a three-story duplex with a total height of thirty-six feet. The City approved the plans and issued building permits for the project as submitted.

In reliance on the building permits and approved plans, PDT began construction in October 2017. In November 2017, a building inspector notified PDT of a violation of the thirty-six-foot height restriction and issued a hold on the property. Construction continued while the parties discussed the height issue. In January 2018, a City inspector cited PDT and issued a stop work order on the grounds that the structure did not comply with the thirty-six-foot height restriction. PDT adjusted the structure to comply with the restriction and the stop work order was lifted.

In April 2018, with the project 90% complete, the City indicated for the first time that the property was subject to a height restriction of twenty-six feet due to application of the RPS ordinance. A stop work order was issued on April 13, 2018 for noncompliance with the RPS ordinance.

PDT alleged that despite multiple opportunities, the City failed to inform it of the height restriction required by the RPS ordinance. If the City had done so before or at the time PDT submitted the development plans or even at the time of the

January stop work order, PDT would have taken the RPS restriction into account and would have adjusted the plans to comply with the RPS restriction. According to PDT, compliance with RPS at the time it was finally raised would require removal of a portion of the structure above twenty-six feet at a cost of thousands of dollars and lengthy delays in completing the project.

PDT applied to the Board for a variance from the RPS height restriction in May 2018. PDT sought a ten-foot variance to the height restrictions to maintain the structure at its current height of thirty-six feet. The Board denied the variance without prejudice after a hearing on May 21, 2018. PDT filed a second application for the variance with newly submitted site plans and elevations on May 27, 2018. City staff recommended approval of the variance. The Board, however, denied the variance with prejudice at a hearing on June 18, 2018. At this point, the project was 95% completed.

PDT filed this suit on June 28, 2018. It sought a writ of certiorari to the Board and judicial review of the decision to deny the variance under local government code section 211.011. TEX. LOC. GOV'T CODE § 211.011. PDT asserted the Board abused its discretion and acted in an arbitrary and capricious manner in refusing to grant the variance. It also alleged the Board's decision was erroneous and illegal and asked the court to reverse the Board and render judgment granting the variance. PDT also alleged that denial of the variance was arbitrary and capricious in violation of PDT's right to the due course of law under the Texas Constitution. *See* TEX. CONST. art. I,

–4–

§ 19. The Board filed a plea to the jurisdiction on the grounds of governmental immunity. Afterwards, PDT filed an amended petition based on its original petition but adding the defenses of laches and waiver. PDT alleged that the City's delay in raising the RPS restriction for six months while PDT continued construction in accordance with the approved plans and permits precluded the City from enforcing the RPS ordinance and from denying the variance.

Following mediation, the parties filed an agreed motion to abate the case while PDT sought another hearing on its request for a variance. The trial court abated the case and ordered the Board to set a new hearing on PDT's request for a variance. The hearing was held on May 18, 2020. City staff again recommended approval of the variance. The Board, consisting of entirely new members, denied the variance at the conclusion of the hearing.

The parties filed an agreed motion to lift the abatement on October 2, 2020. They advised the court of the May 18, 2020 hearing before the Board and the denial of PDT's application for a variance. The trial court granted the motion on October 8, 2020.

PDT filed its second amended petition on October 15, 2020. In addition to its previous allegations, PDT pleaded equitable estoppel, alleging the Board was estopped from enforcing the RPS ordinance and requested damages in the

alternative. PDT prayed for a judgment declaring[1] the Board is estopped from enforcing the RPS or, alternatively, awarding PDT damages for complying with the RPS ordinance.

After a hearing on the Board's plea to the jurisdiction, the trial court denied the plea and the Board perfected this interlocutory appeal of the order.

The Board raises six issues on appeal: (1) the trial court erred by denying the plea to the jurisdiction; (2) the court lacked jurisdiction to review the Board's decision at the May 18, 2020 hearing; (3) there is no jurisdiction over PDT's equitable defenses; (4) there is no jurisdiction over any claim for damages; (5) this is not an exceptional case where estoppel applies against a city; and (6) there is no jurisdiction over PDT's constitutional claim.

**Standard of Review**

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). The plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Id*. "In a suit against a governmental unit, the plaintiff must

---

[1] PDT did not expressly seek a declaratory judgment under the Uniform Declaratory Judgments Act. Its prayer asked the court to declare that the Board is estopped from enforcing the RPS ordinance, but that relief would be duplicative of relief available under section 211.011. PDT did not plead for injunctive relief. Therefore, we do not address the Board's arguments about declaratory or injunctive relief.

affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Heckman*, 369 S.W.3d at 149.

When, as here, the plea challenges jurisdictional facts, the standard generally mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228. We "consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised," even where those facts may implicate the merits of the cause of action. *Id.* at 227. If the evidence creates a fact question as to the jurisdictional issue, then the factfinder will decide that question. *Id.* "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* When reviewing the evidence, we must "take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 228.

"Governmental immunity generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014)). Governmental immunity from suit deprives a court of subject matter

jurisdiction over claims against political subdivisions of the state, including cities, absent legislative waiver. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

**Discussion**

**A. Judicial Review Under Section 211.011**

Under local government code section 211.011, a person aggrieved by a decision of a board of adjustment may seek judicial review by presenting a verified petition stating the decision is illegal, in whole or in part, and specifying the grounds of the illegality to a district court, county court, or county court at law. TEX. LOC. GOV'T CODE § 211.011(a). The petition must be presented within ten days after the date the board's decision is filed in the board's office. *Id.* § 211.011(b). The court may reverse or affirm, in whole or in part, or modify the decision that is appealed. *Id.* § 211.011(f). The court sits only as a court of review of the board of adjustment's decision. *See City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006). The only issue for the court to determine is the legality of the board of adjustment's decision. *Id.* The plaintiff has the burden of establishing illegality by a "very clear showing" that the board of adjustment abused its discretion. *See id.*

While the parties argue the merits of whether a variance should have been granted by the Board, the issue before us is more narrow. We are concerned only with whether the trial court had subject matter jurisdiction to decide whether the Board's decision was illegal under section 211.011. *See Tarrant County Coll. Dist. v. Sims*, 621 S.W.3d 323, 327 (Tex. App.—Dallas 2021, no pet.) (stating appellate

–8–

court does not look to the merits of the case but considers only the pleadings and evidence relevant to the jurisdictional inquiry).

The Board does not dispute that the original petition was timely filed within ten days of the Board's June 18, 2018 decision. The Board argues on appeal,[2] however, that PDT was required to file a new petition (either by amendment in this case or in a new case) within ten days of the May 20, 2020 Board hearing. The Board cites no authority for this requirement other than the general requirement that a petition for writ of certiorari must be filed within ten days of the Board's decision. *See* LOC. GOV'T § 211.011(b); *Tejas Motel, L.L.C. v. City of Mesquite*, No. 05-19-00667-CV, 2020 WL 2988566, at \*4 (Tex. App.—Dallas June 4, 2020, pet. denied) (mem. op.).

PDT filed this suit within ten days of the Board's denial of the variance on June 18, 2018. Thus, it timely invoked the trial court jurisdiction to review the decision. LOC. GOV'T § 211.011(b). The Board's latter decision reaffirming that denial—made during the pendency of this suit—did not change the substance of the controversy between the parties or the issues before the trial court. "Once a party files a petition within ten (10) days after a zoning board decision, the court has

---

[2] PDT complains that the Board did not raise this contention in its plea to the jurisdiction. However, jurisdictional arguments can be raised for the first time on appeal. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (noting appellate court is not precluded from considering governmental immunity for first time on interlocutory appeal because governmental immunity deprives court of subject matter jurisdiction); *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam) (subject-matter jurisdiction cannot be waived and can be raised at any time).

subject matter jurisdiction to hear and determine a claim that a board of adjustment acted illegally." *Davis v. Zoning Bd. of Adjustment of City of La Porte*, 865 S.W.2d 941, 942 (Tex. 1993) (per curiam); *accord Tellez v. City of Socorro*, 226 S.W.3d 413, 414 (Tex. 2007) (per curiam).

But even if we assume, without deciding, that the second amended petition was not timely as to the May 20, 2020 Board decision, the Board has presented no persuasive authority that the trial court lost jurisdiction under section 211.011 to review the earlier denial of the variance. Under the unique circumstances of this case, PDT timely invoked the trial court's jurisdiction under section 211.011 and later events did not deprive the court of jurisdiction to review the Board's decision. "[W]here jurisdiction is once lawfully and properly acquired, no subsequent fact or event in the particular case serves to defeat the jurisdiction." *Flynt v. Garcia*, 587 S.W.2d 109, 109–10 (Tex. 1979) (per curiam); *accord Chandy v. Kerala Christian Adult Homes, LLC*, 618 S.W.3d 880, 885 (Tex. App.—Dallas 2021, no pet.).

The Board argues we must evaluate jurisdiction as to each claim. We agree. *See Amador v. City of Irving*, No. 05-19-00278-CV, 2020 WL 1316921, at \*7–8 (Tex. App.—Dallas Mar. 20, 2020, no pet.) (concluding trial court had jurisdiction over breach of contract claim but not claims for fraudulent inducement, DTPA violations, and negligence). But we are not persuaded that PDT's original request for judicial review of the denial of a variance in 2018 is a separate claim from its later request for judicial review merely because the Board denied the variance again

in 2020. PDT's complaint is with the Board's denial of a variance, not the timing or repeated occurrence of that denial. There is only one claim for denial of a variance from the application of the RPS ordinance at issue in this case.

The Board argues PDT's pleadings did not show how the Board's decision was illegal. But assuming the pleadings are inadequate, this is a procedural not a jurisdictional defect. *See Tellez*, 226 S.W.3d at 414 (noting that while local government code "requires specific allegations of illegality, nothing indicates the Legislature intended compliance to be jurisdictional"). Construing PDT's pleading liberally, the petition is sufficient to invoke the trial court's jurisdiction to review the decision of the Board under section 211.011. *Id.*

We conclude the trial court did not err by denying the plea to the jurisdiction as to PDT's claim seeking judicial review under section 211.011. We overrule the Board's second issue.

## B. Damages

In its prayer for relief, PDT requested, in the alternative, an award of damages for complying with the RPS ordinance. PDT did not specify what cause of action entitled it to recover damages or cite express authority waiving governmental immunity for recovery of damages.

The plain language of section 211.011(f) does not authorize an award of damages. Loc. Gov't § 211.011(f) (authorizing court to reverse or affirm, in whole or in part, or modify the board's decision).

–11–

Further, PDT is not entitled to damages on its due-course-of-law claim. There is no implied right of action to recover money damages for violation of the due-course-of-law provision of the Texas Bill of Rights. *Sims*, 621 S.W.3d at 330; *City of Houston v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 40 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49 (Tex. 1995) (holding there is no cause of action for damages against governmental entities for violations of free speech and assembly clauses of Texas Constitution).

PDT has not shown an express waiver of immunity to recover damages for equitable estoppel, waiver, or laches. Indeed, equitable estoppel is not an independent cause of action. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 n.1 (Tex. 2004); *Southland Life Ins. Co. v. Vela*, 217 S.W.2d 660, 663 (Tex. 1949). Waiver and laches, like equitable estoppel, are defensive in nature and do not create independent causes of action. *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988); *Jim Rutherford Investments, Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 852–53 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). PDT has not shown it is entitled to damages under these defenses, much less an express waiver of immunity allowing recovery of such damages.

PDT argues *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350 (Tex. App.—Texarkana 2002, pet. denied) supports a claim for damages. In *Maguire Oil*, the court of appeals reversed a summary judgment for the city on Maguire's claims for

inverse condemnation and promissory estoppel but affirmed summary judgment on negligent misrepresentation. *Id.* at 364, 372. *Maguire Oil* is not applicable here because PDT did not allege any of these causes of action.

We conclude PDT failed to affirmatively demonstrate a waiver of immunity allowing damages for any of its claims. The trial court erred by denying the plea to the jurisdiction as to any claim for money damages. We sustain the Board's fourth issue.

## C. Due Course of Law

PDT alleged the Board's denial of a variance violated its right to due course of law under the Texas Constitution. *See* TEX. CONST. art. I, § 19. PDT argued the Board was arbitrary and capricious in refusing to grant the variance. The Board argues PDT does not have a viable constitutional claim because it does not have a property interest in the granting of a variance.

The Texas Constitution authorizes suits for equitable or injunctive relief for violations of the Texas Bill of Rights. *Bouillion*, 896 S.W.2d at 148–49 (citing Tex. Const. art. I § 29). "But this limited waiver of immunity exists only to the extent the plaintiff has pleaded a viable constitutional claim." *Downstream Envtl., L.L.C.*, 444 S.W.3d at 38. Immunity is not waived for constitutional claims "if the constitutional claims are facially invalid." *Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015); *see also Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11

(Tex. 2011) (noting secretary of state retains immunity from suit unless plaintiffs alleged a viable equal protection claim).

To state a valid due-course-of-law claim, a plaintiff must have a liberty or property interest that is entitled to constitutional protection. *Klumb*, 458 S.W.3d at 15. A constitutionally protected right must be a vested right, which is "something more than a mere expectancy based upon an anticipated continuance of an existing law." *Id*. (quoting *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937) (citation omitted)).

We agree with the Board that PDT has not stated a valid due-course-of-law claim because it does not have a vested property right in obtaining a variance from the RPS ordinance. A right is vested when it "has some definitive, rather than merely potential existence." *Tex. S. Univ. v. State Street Bank & Trust Co.*, 212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). A variance from the terms of a zoning ordinance may be granted in specific cases if it is not contrary to the public interest and "due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is done . . ." LOC. GOV'T § 211.009(a)(3); *see Vanesko*, 189 S.W.3d at 772. However, the City of Dallas has adopted standards for granting a variance, which "impose significant barriers to obtaining a variance and sharply curtail the Board's discretion in issuing one." *Vanesko*, 189 S.W.3d at 772. "The mere issuance of a building permit does not render a city's zoning ordinances

–14–

unenforceable, nor does the fact that a permit was issued in error entitle the property owner to a variance in every case." *Id.* at 774. Thus, PDT has no right to obtain a variance.

PDT urges that the City issued a permit for the building, and it relied on that permit in continuing the construction. However, a person does not acquire a vested right in a building permit issued in violation of an ordinance. *City of Amarillo v. Stapf*, 101 S.W.2d 229, 232 (Tex. 1937). In *Stapf*, a building inspector issued a permit for construction of a foundry in a manufacturing district that did not allow such use. *Id.* Because the ordinance did not allow a foundry at the location, "the action of the building inspector in granting the permit was unauthorized, and the permit was void. Under such permit appellee could acquire no rights, and no estoppel would be created." *Id.*; *see also Swain v. Bd. of Adjustment of City of University Park*, 433 S.W.2d 727, 733 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) (holding permit issued in violation of ordinance is void ab initio and no rights were acquired by permit holder); *Davis v. City of Abilene*, 250 S.W.2d 685, 687 (Tex. Civ. App.—Eastland 1952, writ ref'd) (holding permit issued in violation of ordinance was void and vested no rights in permit holder). Put simply, the "building inspector had no power, by the issuance of a permit, to amend or repeal the ordinance." *Stapf*, 101 S.W.2d at 232 (quoting *City of Maplewood v. Provost*, 25 S.W.2d 142, 143 (Mo. App. 1930)).

Moreover, the Dallas City Code provides that issuance of a permit or approval of plans "shall not be construed to be a permit for, or an approval of, any violation of any provision of the codes or of any other city ordinance." Dallas, Tex., Code ch. 52, § 302.4. Any permit presuming to give authority to violate a code provision or other city ordinance "shall not be valid." *Id*. Issuance of a permit does not prevent the building official "from preventing building operations being carried on when in violation of the codes or of any other city ordinance." *Id*. The building official has the duty to suspend or revoke a permit issued in error or "in violation of any city ordinance or regulation or any provision of this chapter or the codes." *Id*. § 302.6.1.

We conclude PDT failed to raise a viable due-course-of-law claim. Therefore, governmental immunity is not waived for PDT's constitutional claim. We sustain the Board's sixth issue.

### D. Defensive Theories

PDT alleged equitable estoppel, laches, and waiver stemming from the City's delay in raising the RPS ordinance and PDT's reliance on the approved plans and permits. PDT contends the City is estopped from enforcing the RPS ordinance against its property and the Board is required to grant a variance. The Board argues these theories are defensive and cannot create jurisdiction or operate as a waiver of governmental immunity.

The supreme court has long held that a city cannot be estopped from exercising its governmental functions and that the unauthorized act of a government

official cannot estop a city's enforcement of a zoning ordinance. *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773–74 (Tex. 2006); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970) (city not estopped from enforcing zoning restrictions); *Stapf*, 101 S.W.2d at 232. There is, however, authority for a limited exception to this rule in cases where justice requires its application and there is no interference with the exercise of the city's governmental functions. *Super Wash*, 198 S.W.3d at 774; *Prasifka*, 450 S.W.2d at 836 (citing *City of Dallas v. Rosenthal*, 239 S.W.2d 636 (Tex. Civ. App.—Dallas 1951, writ ref'd n.r.e.)). But this exception is available "only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Prasifka*, 450 S.W.2d at 836. In *Super Wash*, the supreme court further clarified the exception and "reiterat[ed] its limited applicability." *Super Wash*, 198 S.W.3d at 774 (noting court has applied exception in only one circumstance where city officials made misleading statements regarding compliance with notice of claim requirement).

The merits of whether the limited exception applies to prevent the City from enforcing the RPS ordinance are not before us. *Super Wash* and the cases discussing the exception addressed the issue of whether and under what exceptional circumstances a city may be estopped from enforcing an ordinance, not whether the city's conduct could create jurisdiction where it did not otherwise exist. *See Super Wash*, 198 S.W.3d at 775–76 (holding that mistaken approval of building permit did

–17–

not estop city's enforcement of zoning ordinance); *Prasifka*, 450 S.W.2d at 883–84 (holding unauthorized alteration of zoning map did not estop city from enforcing zoning ordinance); *Stapf*, 101 S.W.2d at 232 (holding permit issued in violation of ordinance did not create estoppel). Estoppel does not create subject matter jurisdiction: "[A] court cannot acquire subject-matter jurisdiction by estoppel." *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001). "A party cannot by its own conduct confer jurisdiction on a court when none exists." *Id.* at 294–95; *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) ("[S]ubject-matter jurisdiction is a power that 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver' . . ." (quoting *Federal Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943))).

Here, jurisdiction exists for judicial review of the Board's decision under section 211.011. Within that jurisdiction, the trial court may or may not decide that the exception applies, but that decision is for the trial court in the first instance. We conclude equitable estoppel, laches, and waiver are defensive theories that may be considered in the context of judicial review of the Board's decision pursuant to section 211.011, subject to the principles set out in *Vanesko*. *See* Loc. Gov't § 211.011; *Vanesko*, 189 S.W.3d at 771. We express no opinion on the merits of these theories. *See Vanesko*, 189 S.W.3d at 774 (concluding Board not required to consider erroneous issuance of permit). Accordingly, the trial court did not err by denying the plea to the jurisdiction as to these defensive theories. We overrule the Board's third

issue and do not address its fifth issue, which argues this is not an exceptional case where estoppel applies. *See* Tex. R. App. P. 47.1.

## Conclusion

PDT has not shown a waiver of governmental immunity for the recovery of money damages. It has also failed to plead a viable due-course-of-law claim for the denial of a variance from the RPS ordinance. We conclude the trial court erred by denying the Board's plea to the jurisdiction as to any claim for damages and as to the due-course-of-law claim. However, PDT's equitable defensive theories are within the trial court's jurisdiction to review the Board's decision under section 211.011. We sustain the Board's first issue in part and overrule it in part.

We reverse the trial court's order in part and render judgment dismissing PDT's claims for money damages and due-course-of-law violations for want of jurisdiction. In all other respects, we affirm the trial court's order and remand for further proceedings consistent with this opinion.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

210018f.p05

Pedersen, III, J., concurring



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS AND BOARD OF ADJUSTMENT OF THE CITY OF DALLAS, Appellants

No. 05-21-00018-CV       V.

PDT HOLDINGS, INC. AND PHILLIP THOMPSON HOMES, INC, D/B/A PHILLIP THOMPSON CUSTOM HOMES, Appellees

On Appeal from the 14th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-08484. Opinion delivered by Justice Nowell. Justices Osborne and Pedersen, III participating.

In accordance with this Court's opinion of this date, the trial court's December 21, 2020 order denying defendants' plea to the jurisdiction is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order denying appellants' plea to the jurisdiction as to appellees' claims for money damages and for violation of the due course of law. We **RENDER** judgment dismissing appellees' claims for money damages and for violation of the due course of law for want of jurisdiction. In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 24th day of August, 2021.